**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| _____ | : | |
| ATLANTIC PLASTIC AND HAND | : | |
| SURGERY, PA and MICHAEL S. | : | |
| RISIN, M.D., _as designated and_ | : | |
| _authorized representative of Patient_ | : | |
| _Clifford Robinson_; and PATIENT | : | |
| CLIFFORD ROBINSON, _individually_, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 17-4600 (FLW) (DEA) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| ANTHEM BLUE CROSS LIFE AND | : | |
| HEALTH INSURANCE COMPANY; and | : | |
| ASHLAND CHEMICAL COMPANY, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**WOLFSON, United States District Judge:**

Following the partial denial of a claim for benefits under an employee health insurance benefits plan, Plaintiffs Atlantic Plastic & Hand Surgery, PA ("Atlantic"), Michael S. Risin, M.D. ("Dr. Risin") (collectively with Atlantic, the "Providers"), and Clifford Robinson (collectively with the Providers, "Plaintiffs") commenced this action against Defendants Anthem Blue Cross Life and Health Insurance Company ("Anthem") and Ashland LLC ("Ashland")[1] (collectively with Anthem, "Defendants"), asserting claims under Sections 502(a)(1)(B) and 502(g)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(g)(1).  Defendants move, separately, to dismiss all counts in the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons

---

[1] Ashland was improperly named in the Complaint as Ashland Chemical Company.

that follow, the Court concludes that: (1) the Providers lack standing to bring this action, and thus, all claims asserted by the Providers are dismissed; and (2) although Mr. Robinson has standing to assert the ERISA claims, Mr. Robinson has failed to state a claim upon which relief can be granted, and thus, the Complaint is dismissed without prejudice as to Mr. Robinson. However, Mr. Robinson is given leave to amend his Complaint, consistent with this Opinion, within thirty (30) days from the date of the Order accompanying this decision.

## I.    __BACKGROUND__[2]

Dr. Risin is a board certified plastic surgeon who is licensed to practice in the state of New Jersey.  Compl. ¶ 2.  Dr. Risin is a shareholder in, or owner of, Atlantic, a healthcare provider with an office in Little Silver, New Jersey.  *Id.* at ¶¶ 1, 3.  On February 12, 2014, Dr. Risin performed surgery and other medical services (the "Procedure") on Plaintiff Clifford Robinson at the Riverview Medical Center in Red Bank, New Jersey.  *Id.* at ¶¶ 32, 37.

Mr. Robinson is a member of, and participant in, a self-funded, ERISA-governed employee health insurance benefits plan (the "Plan").  *Id.* at ¶ 6; *see* Ashland Inc. CDHP HSA Medical Plan (the "Plan"), Certification of Amanda Lyn Genovese, Ex. A at 44, ECF No. 12-2.[3] The Plan is sponsored by Ashland and administered by Anthem.  Compl. ¶¶ 10-11, 19; *see* Plan at 63.

---

[2] The following factual allegations are taken from the Complaint and assumed as true in deciding the instant Motions.  *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) (observing that, on a motion to dismiss, the court must "accept all factual allegations as true, construe the . . . complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the amended complaint, he may be entitled to relief.").

[3] "Although a district court may not consider matters extraneous to the pleadings, 'a document *integral* to or *explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'"  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis in original).  Accordingly, because Plaintiffs reference and rely upon the Plan in their Complaint, the Court may consider the Plan on these Motions to Dismiss.

The Providers are "non-participating," "out-of-network providers" under the Plan, and the services provided to Mr. Robinson were "out-of-network services" under the Plan, because the Providers did not enter into a contract with Anthem. Compl. ¶¶ 33-34. The Complaint alleges that, in connection with their performance of any "out-of-network medical services," the Providers "require all patients to sign documents whereby the patient agrees to be personally responsible for all medical charges." *Id.* at ¶ 16. The Complaint further alleges that the Providers obtain an "Assignment of Benefits and Limited Power of Attorney" from all patients who receive out-of-network services, which purportedly makes the Providers beneficiaries of their patients' ERISA-governed healthcare plans. *Id.* The Providers "do not waive any deductible or co-payment by acceptance of the assignment." *Id.* at ¶ 17. In accordance with this policy, the Complaint alleges that the Providers obtained an assignment of benefits from Mr. Robinson on June 1, 2014. *Id.*; *see* ERISA Authorized Representative Designation, Compl., Ex. A.

After performing the Procedure, the Providers submitted a claim, as the purported assignees of Mr. Robinson, to Anthem (the "Claim"), requesting payment in the amount of $55,761.30 for the out-of-network services that they provided to Mr. Robinson. Compl. ¶ 38. On April 21, 2014, Anthem sent the Providers an explanation of benefits notice (the "EOB"), which authorized partial payment of the Claim to the Providers, in the amount of $3,501.60. *Id.* at ¶ 40.

The Complaint is unclear as to Plaintiffs' actions following the issuance of the EOB. To wit, the Complaint alleges that on February 18, 2015, Mr. Robinson "filed a *second* appeal" of the April 21, 2014 EOB, without any reference or allegation relating to any *first* appeal of the EOB. *Id.* at ¶ 41 and Ex. B (emphasis added). Further confounding is the Complaint's

allegation that, on July 17, 2015, Anthem "responded to *the March 10th* [a]ppeal," in light of the fact that the Complaint fails to otherwise reference any purported March appeal.[4]  *Id.* at ¶ 42 (emphasis added).  In any event, on June 17, 2015, Anthem denied Mr. Robinson's appeal, stating that the Claim was "processed correctly to pay in network at plan allowance, and not at billed charge." *Id.* at ¶ 42 and Ex. C.  Plaintiffs allege that they have exhausted all claim appeal procedures and administrative remedies under the Plan.  *Id.* at ¶¶ 43-44.

On June 22, 2017, Plaintiffs filed the instant Complaint, seeking to recover from Defendants the unpaid balance of the Claim.  ECF No. 1.  The Complaint asserts two claims:  (1) Count One asserts that Defendants violated § 502(a)(1)(B) of ERISA by, *inter alia*, underpaying the Providers for the services rendered to Mr. Robinson,[5] *see* Compl. ¶¶ 47-69; and (2) Count Two asserts that Plaintiffs are entitled to attorneys' fees and costs, pursuant to § 502(g)(1) of ERISA.  *See id.* at ¶¶ 70-74.  On August 24, 2017, Anthem and Ashland moved, separately, to dismiss the Complaint in its entirety, arguing that Plaintiffs lack standing to bring the Complaint, and that Plaintiffs have failed to state viable ERISA claims upon which relief can be granted.  *See* ECF Nos. 12-13.  Defendants' Motions have been fully briefed.  *See* ECF Nos. 20-22.

## II.  **LEGAL STANDARD**

### A.  **Federal Rule of Civil Procedure 12(b)(1)**

---

[4] While the Court will not attempt to decode Plaintiffs' abstruse allegations regarding the appeals process, because the EOB was issued in April 2014, and Mr. Robinson's "second appeal" was allegedly filed in February 2015, it follows that the Court cannot infer that the March 10 appeal is the omitted first appeal.

[5] Although Count One asserts a single claim alleging that Defendants violated § 502(a)(1)(B) of ERISA, as discussed, *infra*, within that Count, Plaintiffs also allege that Defendants are fiduciaries under the Plan, as defined under §§ 404(a)(1)(A)-(B), 405(a), and 409(a) of ERISA, *see* Compl. ¶¶ 48-55, and that Defendants breached their fiduciary duties to Plaintiffs by failing to comply with various procedural requirements of § 503 of ERISA and its accompanying regulation, 29 CFR 2560.503-1.  *See id*. at ¶ 63.

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See* FED. R. CIV. P. 12(b)(1). "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *see St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."). "On a motion to dismiss for lack of standing, the plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Ballentine*, 486 F.3d at 810 (citations and internal quotation marks omitted).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted); *see Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (observing that in reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."). A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the

defendant to present competing facts." *Hartig Drug Co.*, 836 F.3d at 268. The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

###### B.    Federal Rule of Civil Procedure 12(b)(6).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)[6] does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of*

---

[6] In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court reaffirmed that Federal Rule of Civil Procedure 8(a) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

*Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "outline[s] the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Finally, where "there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

## III.    DISCUSSION

In moving to dismiss the Complaint, Defendants make the following arguments:  (A) the Providers lack standing to assert ERISA claims for benefits on behalf of Mr. Robinson; (B) Mr. Robinson lacks Article III standing; (C) the Complaint fails to adequately allege viable ERISA claims; and (D) Plaintiffs have failed to exhaust their administrative remedies under the Plan, as required to assert an ERISA claim. The Court will address each of these arguments, in turn.

### A.    The Providers Lack Standing Under ERISA

Defendants argue, first, that the Providers lack standing to assert any ERISA-based claims, because: (1) the Providers are neither participants nor beneficiaries under the Plan; and (2) the Plan contains a valid anti-assignment provision, which precludes the Providers from asserting claims as assignees of Mr. Robinson. The Providers concede that they are neither participants nor beneficiaries of the Plan, but argue that they have standing as assignees of Mr. Robinson because the anti-assignment provision is unenforceable.

Section 502(a) authorizes a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). By its terms, ERISA's civil enforcement provision thus limits standing to plan participants[7] or beneficiaries.[8] *Id.*; *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) ("By its terms, standing under [ERISA] is limited to participants and beneficiaries."). Concededly, the Providers are neither participants nor beneficiaries of the Plan. Rather, the Providers argue that they have ERISA standing because they are the assignees of a beneficiary of the Plan, Mr. Robinson.

While "ERISA itself is silent on the issue of derivative standing and assignments," *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015), the Third Circuit has

---

[7] Under ERISA, a "participant" is defined as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

[8] The statute defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

extended standing to assert ERISA claims to health care providers who have obtained a valid assignment of benefits from a plan participant. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n. 10 (3d Cir. 2014) (holding that health care providers have standing to assert "properly assigned" ERISA claims on behalf of plan participants); *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372 ("Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary."). Defendants do not dispute the general premise that a valid assignment of benefits confers ERISA standing upon a provider; rather, Defendants contend the Plan's anti-assignment provision precluded Mr. Robinson from assigning his right to benefits under the Plan to the Providers, thereby depriving the Providers of ERISA standing in this case. I agree.

As an initial matter, I note that although the Third Circuit has not addressed the enforceability of anti-assignment provisions contained in ERISA-governed employee benefit plans, the consensus from other courts of appeals that have considered that issue is that unambiguous anti-assignment provisions are enforceable. *See*, *e.g.*, *Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294–96 (11th Cir. 2004) ("Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability. Thus, an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable."); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 353 (5th Cir. 2002) (finding that the plan included a valid anti-assignment provision, which "render[ed] nugatory any purported assignment of benefits from the beneficiary, thereby depriving the provider of "standing to sue the Plan for [the patient's] benefits under ERISA Section 502."); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998) ("Consistent with the other circuits which

have addressed this issue, we hold that ERISA leaves the assignability or non-assignability of health care benefits under ERISA-regulated welfare plans to the negotiations of the contracting parties."); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1464–65 (10th Cir. 1995) ("ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties."); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) ("As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions.").

Consistent with those decisions, courts within this District routinely enforce unambiguous anti-assignment provisions contained in ERISA-governed plans, and thus, find that providers lack derivative standing to seek benefits from the plan on behalf of their patients. *See*, *e.g.*, *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 606 (D.N.J. 2011) (finding that a valid anti-assignment clause precluded a provider from asserting ERISA claims on behalf of a patient-participant); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7825, 2017 WL 6514663, at *3 (D.N.J. Dec. 20, 2017) (finding that a clear and unambiguous anti-assignment provision precluded the provider from asserting ERISA claims on behalf of a patient-participant); *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *8 (D.N.J. July 15, 2015) ("Any assignment of rights and benefits under the Plan is precluded by the unambiguous anti-assignment clause; accordingly, any purported assignment is invalid. As such, the Provider Plaintiffs are not beneficiaries under the Plan, and lack standing to bring their claims.").

In the case at bar, the Plan's anti-assignment provision states:

**Assignment**
You authorize the Claims Administrator, on behalf of the Employer, to make payments directly to Providers for Covered Services. The Claims Administrator also reserves the right to make payments directly to You. Payments may also be made to, and notice

regarding the receipt and/or adjudication of claims, an Alternate Recipient, or that person's custodial parent or designated representative. Any payments made by the Claims Administrator will discharge the Employer's obligation to pay for Covered Services. ***You cannot assign Your right to receive payment to anyone else, except as required by a "Qualified Medical Child Support Order" as defined by ERISA or any applicable Federal law.***

Once a Provider performs a Covered Service, the Claims Administrator will not honor a request to withhold payment of the claims submitted.

***The coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above.***

Plan at 44 (emphasis added).

Notwithstanding this anti-assignment provision, as well as the weight of authority finding that anti-assignment provisions in ERISA plans are generally enforceable, the Providers argue that the anti-assignment provision at issue in this case does not deprive them of standing to assert ERISA claims on behalf of Mr. Robinson. Pls.' Br. at 5-7. Specifically, the Providers point to the clauses of the anti-assignment provision that permit Anthem to make payments directly to "Providers[,] . . . an Alternate Recipient, or that person's custodial parent or designated representative," and argue that because they are Mr. Robinson's designated authorized representatives, they have standing to sue under ERISA. Pls.' Br. at 6-7. In support of their standing argument, the Providers cite *N. Jersey Brain & Spine Ctr.*, where the Third Circuit held that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." 801 F.3d at 372. In short, the Providers' argument, distilled to its essence, is that the Plan language authorizing Anthem to make direct payments to the Providers confers standing on the Providers.

Contrary to the Providers' argument, however, the clear and unambiguous language of the anti-assignment provision provides that although the "*Claims Administrator* [Anthem]" is authorized to make payments directly to the Providers, "*You* [Mr. Robinson] *cannot assign Your*

*right to receive payment to anyone else*, except as required by a 'Qualified Medical Child

Support Order' as defined by ERISA or any applicable Federal law." Plan at 44 (emphasis

added). The anti-assignment provision further provides that "[t]he coverage and any benefits

under the Plan *are not assignable* by any Member *without the written consent of the Plan*, except

as provided above." *Id.* Because this language unambiguously provides that, absent the consent

of the Plan, Mr. Robinson cannot assign his benefits under the Plan to the Providers, and because

Mr. Robinson has not pled that he received consent from the Plan to assign his benefits to the

Providers, the Court finds that the anti-assignment provision is enforceable.

Indeed, in the related waiver context, various courts have rejected the argument that

payment to a provider directly amounts to waiver of an anti-assignment provision, where the

plan at issue authorizes direct payment to providers. *See*, *e.g.*, *IGEA Brain & Spine, P.A. v. Blue

Cross & Blue Shield of Minnesota*, No. 16-5844, 2017 WL 1968387, at *3 (D.N.J. May 12,

2017) ("[C]ourts in this District have found that even remitting payment directly to a provider

does not alone render anti-assignment provisions unenforceable if such action is authorized

under the plan at issue."); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of

Massachusetts*, No. 14-7280, 2015 WL 4430488, at *7 (D.N.J. July 20, 2015) (rejecting the

provider's argument that the administrator waived its right to enforce an anti-assignment clause

by remitting payment directly to the provider, where the plan authorized direct payment to the

provider); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*,

No. 06-0462, 2007 WL 4570323, at *4 (D.N.J. Dec. 26, 2007) ("Horizon's direct payments to

GSS would not constitute a waiver if authorized under the Horizon plans at issue . . . ."); *Mbody

Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-6551, 2014 WL

4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Health insurance companies routinely make direct

payments to healthcare providers without waiving anti-assignment provisions."). In *Advanced Orthopedics*, for example, this Court rejected the provider's argument that the administrator of an ERISA-governed plan "implicitly waived the [plan's] anti-assignment clause by sending a direct payment to [the provider]," 2015 WL 4430488 at *7, finding that "[b]ecause the terms of the [plan] permit direct payment to healthcare providers, . . . a direct payment does not constitute a waiver of the anti-assignment clause." *Id.* Accordingly, this Court enforced the anti-assignment provision at issue in that case to find that the patient's purported assignment to the provider was void, and thus, dismissed the provider's ERISA claims for lack of standing. *Id.* at *10.

Here, the Court cannot discern any reason to depart from *Advanced Orthopedics* or the other authorities holding that direct payment to a provider does not amount to waiver of an anti-assignment provision, where such payment is authorized under the plan at issue. Rather, I find that the reasoning of those decisions is equally compelling in the present context. That is, although the terms of the anti-assignment provision authorize Anthem to make direct payment to the Providers, in light of the unambiguous language in the anti-assignment provision precluding Mr. Robinson from assigning his benefits under the Plan to anyone else, Anthem's right to pay the Providers directly does not confer standing upon the Providers. Simply put, the anti-assignment provision authorizes payment from Anthem to the Providers, without conferring ERISA standing on the Providers.

Moreover, the Providers' reliance on *N. Jersey Brain & Spine Ctr.* is misplaced. The Providers are correct that in *N. Jersey Brain & Spine Ctr.*, the Third Circuit held, as a general proposition, that "when a *patient* assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)," even if the

assignment at issue does not directly reference the provider's right to file suit on behalf of the patient. 801 F.3d at 372 (emphasis added). *N. Jersey Brain & Spine Ctr.* is inapposite, however, because that case did not analyze the effect of a valid anti-assignment provision on a provider's ability to assert ERISA claims on behalf of a patient. Thus, while the Court does not dispute that, in the absence of a valid anti-assignment provision, the assignment of Mr. Robinson's right to receive benefits under the Plan to the Providers would confer ERISA standing upon the Providers, because a valid anti-assignment provision exists, Mr. Robinson's assignment to the Providers is void, and the Providers lack standing in this case.

Accordingly, because the Providers are not beneficiaries or participants in the Plan, and because the anti-assignment provision invalidates Mr. Robinson's purported assignment of benefits to the Providers, the Providers lack standing to pursue the ERISA claims at issue in this case, and Defendants' Motions to Dismiss are granted as to the claims asserted by the Providers.

### B.      Mr. Robinson's Constitutional Standing

Next, Defendants argue that Mr. Robinson has not sustained an injury-in-fact, as required for the Court to find that Mr. Robinson has Article III standing, because Mr. Robinson has not alleged that he sustained any concrete, particularized harm as a result of Anthem's partial denial of the Claim. Specifically, Defendants maintain that Mr. Robinson has not alleged that he actually paid for the unreimbursed portion of the Claim, or that he was billed for the unpaid portion of the Claim.

Article III of the United States Constitution confines the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. CONST. art. III, § 2. This "bedrock requirement," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982), protects the system of separation of powers and respect for the

coequal branches by restricting the province of the judiciary to "decid[ing] on the rights of individuals." *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). Indeed, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("In order to remain faithful to this tripartite structure, the power of the Federal Judiciary may not be permitted to intrude upon the powers given to the other branches.").

The courts have developed several justiciability doctrines to enforce the "case" or "controversy" requirement. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Among those doctrines, "[t]he Art[icle] III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important . . . ." *Allen v. Wright*, 468 U.S. 737, 750 (1984). The seminal standing question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Seldin*, 422 U.S. at 498–99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

To satisfy the "irreducible constitutional minimum" of Article III standing, the plaintiff must establish three well-settled elements:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.

> Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.

> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, alterations, and citations omitted); *see Spokeo*, 136 S. Ct. at 1547 ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). Although the plaintiff bears the burden of establishing each of these three elements, the Third Circuit has stressed that the "injury-in-fact element is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009); *see also Spokeo*, 136 S. Ct. at 1547 ("This case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements.") (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)). To satisfy the injury-in-fact requirement, the injury must be "particularized," such that it affects the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. The Supreme Court has emphasized that the injury must also be "concrete in both a qualitative and temporal sense"; *i.e.*, the "complainant must allege an injury to himself that is 'distinct and palpable,' as opposed to merely '[a]bstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotations and citations omitted). To that end, allegations of a potential future injury, or the mere possibility of a future injury, will not establish standing. *See id.* at 158; *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III.").

Additionally, the injury-in-fact test "requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *see In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). Put differently, "[w]hile it does not matter how many persons have

been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way." *Lujan*, 504 U.S. at 581.  The requirement that that the injury affect the plaintiff in a personal and individual way "preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that 'the legal questions presented . . . will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *Id.* (quoting *Valley Forge*, 454 U.S. at 472).

Ultimately, the standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen*, 468 U.S. at 752.  To that end, at the pleading stage, "[a]lthough general factual allegations of injury resulting from the defendant's conduct may suffice, the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly*, 664 F.3d at 41 (quoting *Whitmore*, 495 U.S. at 155); see *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) ("Plaintiffs do not allege an injury-in-fact when they rely on a 'chain of contingencies' or 'mere speculation.' ") (citation omitted).

Here, contrary to Defendants' contentions, the Complaint's factual allegations, taken as true, are sufficient to establish that Mr. Robinson has sustained an injury-in-fact that is "actual or imminent," as opposed to "conjectural or hypothetical." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).  Significantly, several courts within this District have rejected arguments identical to those proffered by Defendants, finding that an allegation that a patient is personally liable for the costs of unreimbursed medical benefits is sufficient to establish injury-in-fact, even though the complaint does not allege that the patient has already paid or been billed

for those expenses. *See*, *e.g.*, *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981 at *9 (finding that a patient sufficiently alleged injury-in-fact, despite his failure to plead that he paid any of the costs of his medical expenses out-of-pocket, where the patient signed documents rendering him personally liable for all medical charges); *Prof'l Orthopedic Assocs., PA v. CareFirst BlueCross BlueShield*, No. 14-4486, 2015 WL 4025399, at *5 (D.N.J. June 30, 2015) ("[T]he allegations that Defendants have failed to pay benefits allegedly due to Patient GG and that Patient GG's is personally liable to POA and Dr. Cohen for the medical expenses incurred are sufficient to establish the existence of Article III standing."); *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 13-3057, 2013 WL 5780815, at *7 (D.N.J. Oct. 25, 2013) ("Horizon's failure to pay the benefits allegedly due to Patient F.L., and Patient F.L.'s consequent liability to Dr. Cohen constitute a particularized injury sufficient to confer Article III standing."); *Menkowitz v. Blue Cross Blue Shield of Illinois*, No. 14-2946, 2014 WL 5392063, at *3 (D.N.J. Oct. 23, 2014) (rejecting the argument that the patient "has not asserted an injury-in-fact because the Complaint does not allege that Dr. Menkowitz has sought to recover any payment from [the patient]," where the patient alleged that she was personally liable for the medical expenses incurred).

For example, in *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, the defendants argued that the patient-plaintiff had not sufficiently alleged an injury-in-fact, because the complaint was devoid of any allegations that the patient actually paid any portion of the billed charges for medical services, or that the providers had attempted to collect from the patient the unpaid portion of the claim. 2015 WL 4387981 at *8. This Court rejected the defendants' argument, finding that the patient's allegations that he signed a contract rendering him personally liable for all medical services, coupled with the fact that there were no allegations suggesting that

the providers had forgiven or would forgive the outstanding medical charges owed to them, were sufficient to demonstrate injury-in-fact. *Id.* at *8-9. Specifically, the Court found as follows:

> While [the moving defendant] has emphasized that there are no allegations that [the patient] actually paid any portion of the billed charges, this argument applies solely to the issue of remedy; it does not impact the question of whether [the patient's] legal interests have been violated by the conduct of the Defendants. The clear inference from the Complaint is that [the patient] remains indebted to the Provider Plaintiffs for a greater amount than she would have been had Defendants properly paid the asserted benefits. Such allegations are sufficient to create an injury-in-fact, and accordingly establish Article III standing.

*Id.* at *9.

Similarly, here, the Complaint alleges that Mr. Robinson is personally liable for the costs of any medical services rendered by the Providers. *See* Compl. ¶ 16. And, as in *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, the Complaint is devoid of any allegations suggesting that the Providers have forgiven, or will forgive, the outstanding balance owed to them for the Procedure. To the contrary, the Providers' participation as plaintiffs in this case indicates that they have "every intention to collect the outstanding amount which" they claim they are owed, if not from Defendants, then from Mr. Robinson himself. *Cohen*, 2013 WL 5780815 at *7. Accordingly, because Mr. Robinson has established the existence of a concrete, particularized injury-in-fact by alleging that he is personally liable to the Providers for the unpaid portion of the Claim, the Court finds that Mr. Robinson has Article III standing to assert his ERISA claims.

### C. Viability of Plaintiffs' ERISA Claims

Having found that Mr. Robinson has standing to pursue this action, the Court turns to Defendants' argument that the Complaint fails to state a claim upon which relief can be granted. Specifically, Defendants argue that Plaintiffs: (1) fail to allege facts sufficient to support a claim under § 502(a)(1)(B) of ERISA; and (2) because Plaintiffs have failed to state a claim for relief

under § 502(a)(1)(B), Plaintiffs' claim for attorneys' fees and costs under § 502(g)(1) of ERISA necessarily fails.

### 1. *Count One: Denial of Benefits Under § 502(a)(1)(B) of ERISA*

Under § 502(a)(1)(B) of ERISA, a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see Manning v. Sanofi-Aventis, U.S. Inc.*, No. 11-1134, 2012 WL 3542284, at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(1)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(1)(B).").

Defendants maintain that Plaintiffs' claim for unpaid benefits under § 502(a)(1)(B) of ERISA must be dismissed, because it fails to meet the facial plausibility pleading standard set forth in *Twombly* and *Iqbal*. As summarized above, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Here, the gravamen of Plaintiffs' claim for unpaid benefits is that Defendants "failed to pay the 'usual and customary charge' for [Dr. Risin's] [s]ervices which is the 'usual and customary charge in a given geographical area."[9] Compl. ¶ 63(h). Defendants argue that Plaintiffs' assertion is insufficient

---

[9] As discussed further, *infra*, Count One also contains various references to Defendants' alleged fiduciary duties, and alleges that Plaintiffs breached their fiduciary duties by violating the procedural requirements of ERISA.

to meet the pleading standard, however, because the Complaint fails to identify – or allege the existence of – any provision in the Plan requiring Defendants to pay for out-of-network services in accordance the "usual and customary rate," or otherwise specify which terms of the Plan were violated by Defendants' alleged underpayment.

The Court finds that, even accepting as true the allegations in the Complaint, Plaintiffs have failed to allege sufficient facts upon which to state a plausible claim for wrongful denial of benefits under § 502(a)(1)(B). Significantly, the plain language of § 502(a)(1)(B) requires a plaintiff to demonstrate his entitlement to "benefits due to him *under the terms of his plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). To that end, the Third Circuit has emphasized that, "to assert an action to recover benefits under ERISA, a plaintiff must demonstrate that 'he or she [has] a right to benefits that is legally enforceable against the plan.'" *Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 111 (3d Cir. 2010) (quoting *Hooven*, 465 F.3d at 574). Here, Plaintiffs' threadbare allegation that Defendants violated § 502(a)(1)(B) by failing to pay the "usual and customary charge" for the Procedure, without any concomitant allegation that the Plan obligated Defendants to pay for out-of-network medical services in accordance with the "usual and customary" rate, is fatal to their claim for unpaid benefits.[10] Thus, because the

---

[10] While the Complaint alleges generally that "Plaintiffs are entitled to recover said medical and healthcare benefits pursuant to ERISA and pursuant to the medical benefit plan at issue," Compl. ¶ 66, absent the requisite factual support, the Court need not accept that legal conclusion. *See Iqbal*, 556 U.S. at 679 ("A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (citation omitted); *Fowler*, 578 F.3d at 210 ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss . . . .").

Complaint fails to identify any specific provision in the Plan from which the Court can infer that Plaintiffs were entitled to compensation at the "usual and customary rate" for out-of-network medical services, the Court dismisses without prejudice Plaintiffs' § 502(a)(1)(B) claim for failure to plead sufficient facts to state a claim for relief. *Cf. Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) ("ERISA neither mandates the creation of . . . plans nor dictates the benefits to be afforded once a plan is created. . . . *Only the words of the Plan itself can create an entitlement to benefits*.") (emphasis added).

Indeed, several courts have dismissed similarly ill-pleaded ERISA claims. *See, e.g.*, *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016) (dismissing the plaintiff's § 502(a)(1)(B) claim for wrongful denial of pension and retirement benefits, where, *inter alia*, the plaintiff failed to identify "any provision of [the plan] suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan."); *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 09-571, 2009 WL 3242136, at *3 (D.N.J. Oct. 7, 2009) (dismissing the plaintiff's claim for underpayment of benefits under § 502(a)(1)(B), where the complaint "fail[ed], under Rule 8(a), to give notice of what [the defendant] did in contravention of the terms of the health plan and/or in violation of ERISA."); *Prof'l Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 41 (2d Cir. 2017) (affirming the district court's dismissal of the plaintiff's § 502(a)(1)(B) claim, where the complaint alleged that the defendant was "required to pay the 'usual, customary and reasonable rates' for services rendered by the out-of-network providers . . . but it fail[ed] to identify any provision in the plan documents requiring the [defendant] to pay such rates.").

For example, in *Piscopo*, the district court dismissed the plaintiff's claim that the defendant violated § 502(a)(1)(B) by denying his request for pension and retirement benefits, finding that the plaintiff failed to sufficiently allege that he was entitled to such benefits under the terms of his ERISA-governed benefits plan. *Piscopo*, 2015 WL 3938925 at *5-6. In so doing, the court reasoned as follows:

> As to Plaintiff's section 502(a) ERISA claim for pension and retirement benefits, Plaintiff has presented the same threadbare allegations that the Court rejected in its past two opinions. In its September 27, 2013 Opinion, the Court dismissed Plaintiff's ERISA claim on several grounds, one of which was that Plaintiff did "not even allege any facts regarding the details of his pension benefit plan." In its July 3, 2014 Opinion, the Court similarly explained that Plaintiff "does not present facts or evidence showing the provisions of the benefit plan upon which he relies on . . . . In fact, Plaintiff does not allege any facts regarding the details of his pension benefit plan whatsoever." Once again, Plaintiff has not pointed to any provision of a PSE & G benefit plan suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan.
>
> Like Plaintiff's past complaints, the conclusory statements contained in Plaintiff's Second Amended Complaint are nothing more than a formulaic recitation of the elements of an ERISA claim. Accordingly, the Court dismisses Plaintiff's section 502(a) ERISA claim for failure to plead sufficient facts to state a claim for relief.

*Id.* (internal citations omitted). In affirming the district court's dismissal of the plaintiff's § 502(a)(1)(B) claim, the Third Circuit noted that the plaintiff "simply alleges the elements of § 502(a)(1)(B), but does not provide any details concerning his standing to sue as a beneficiary, the plan, *or any provision showing that he is entitled to retirement benefits*." *Piscopo*, 650 F. App'x at 110 (emphasis added). "[S]uch conclusory statements stating only the elements of the [§ 502(a)(1)(B)] claim[,]" the court reasoned, were "not sufficient to survive a motion to dismiss."[11] *Id.*

_____

[11] Here, Plaintiffs attempt to distinguish *Piscopo* by arguing: (1) that the dismissal of the plaintiff's ERISA claims in that case was premised, in part, on the plaintiff's failure to allege that he submitted a claim for administrative benefits; (2) that the dismissal in that case was predicated, in part, on the fact that, even on his second amended complaint, the plaintiff had

More recently, in *1199SEIU Nat'l Benefit Fund*, the Second Circuit affirmed the dismissal of a § 502(a)(1)(B) claim involving facts virtually identical to those at issue in this case. *See* 697 F. App'x at 41. In *1199SEIU Nat'l Benefit Fund*, the plaintiff asserted a § 502(a)(1)(B) claim alleging that the defendant "breached its ERISA-governed plan language by using, either intentionally or recklessly, flawed or inadequate data and other information to determine the usual, customary and reasonable rates for medical services, which then resulted in the denial of benefits and/or payments of reimbursement well below the usual, customary, and reasonable rates." *Prof'l Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund*, No. 16-4838, 2016 WL 6900686, at *6 (S.D.N.Y. Nov. 22, 2016), *aff'd sub nom.*, 697 F. App'x 39. The district court found that the plaintiff failed to adequately allege such a claim, however, because the complaint did not "contain any specific allegations that the Plan requires payments to be maybe in accordance with any 'usual, customary, and reasonable rates'" and did not "reference any such provisions of the Plan." *Id.* Stated differently, because the plaintiff failed to ground her § 502(a)(1)(B) claim in the language of the plan, the district court found that the complaint was "completely devoid of the required specificity necessary to maintain a claim under Section 502(a)(1)(B)." *Id.* at *6. The Second Circuit affirmed, finding that the plaintiff's allegation that

---

failed to allege any facts about the plan; and (3) that, unlike in *Piscopo*, the Complaint at issue in this case contains specific factual allegations as to Plaintiffs' entitlement to relief under the Plan. *See* Pls.' Br. at 15-16. Plaintiffs' arguments are without merit. First, contrary to Plaintiffs' argument, the *Piscopo* court's discussion of the plaintiff's failure to allege that he submitted a claim for administrative benefits occurred entirely within its analysis of the plaintiff's § 503 claim, and did not bear on its dismissal of the plaintiff's § 502(a)(1)(B) claim. *See Piscopo*, 2015 WL 3938925 at *5-6. Second, the fact that the *Piscopo* court was analyzing a second amended complaint provides no meaningful distinction. Finally, while Plaintiffs summarily argue that the Complaint sets forth "a plethora of factual allegations demonstrating why the Plaintiffs are entitled to relief under the [P]lan," Pls.' Br. at 16, Plaintiffs again fail to identify any specific provision of the Plan that requires Defendants to pay for out-of-network services at the usual or customary rate.

the defendant was "required to pay the 'usual, customary and reasonable rates' for services rendered by the out-of-network providers," was undermined by the complaint's "fail[ure] to identify any provision in the plan documents requiring the [defendant] to pay such rates."[12] *1199SEIU Nat'l Benefit Fund*, 697 F. App'x at 41. The Court finds the reasoning of *Piscopo* and *1199SEIU Nat'l Benefit Fund* persuasive, and thus, finds that Plaintiffs' failure to identify any provision in the Plan requiring Defendants to pay the usual or customary rate for out-of-network services renders Plaintiffs' § 502(a)(1)(B) claim deficient.

Nevertheless, in arguing that the Complaint meets the facial plausibility standard mandated under *Twombly* and *Iqbal*, Plaintiffs direct the Court to the various allegations, contained in Count One of the Complaint, alleging that, by failing to comply with ERISA's procedural requirements – set forth under ERISA § 503 and 29 C.F.R. § 2560.503-1 – Defendants breached their fiduciary duties as administrators of the Plan, rendering them liable under §§ 404(a)(1)(A)-(B), 405(a), and 409(a) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A)-(B), 1105(a), and 1109(a). *See* Compl. ¶¶ 48-55. Specifically, Plaintiffs alleged that Defendants breached their fiduciary duties and violated ERISA by:

- Failing "to process Patient Robinson's claim for benefits and any appeals." *Id.* at ¶ 63(a);

- Failing "to maintain reasonable claims procedures and provide written claim determinations within a specified time period in violation of 29 CFR 2560.503.1(f)." *Id.* at ¶ 63(b);

- Failing "to provide adequate notice in writing setting forth the specific reasons for the denial of benefits to Patient Robinson, written in a manner calculated to be

---

[12] The Court notes that Plaintiffs do not attempt to distinguish *1199SEIU Nat'l Benefit Fund* in their Opposition brief. Rather, Plaintiffs simply argue that because *1199SEIU Nat'l Benefit Fund* was decided by the Second Circuit, that decision "holds zero weight in terms of persuasiveness." Pls.' Br. at 10. While acknowledging that out-of-circuit cases are not binding on this Court, I find persuasive the reasoning of *1199SEIU Nat'l Benefit Fund*, particularly since that case is consistent with the legal principles espoused by the Third Circuit.

understood by Patient Robinson and [failing] to provide a description of or a copy of any internal rule, guideline, protocol, or other similar criterion that was relied upon in arriving at the denial in violation of 29 CFR 2560.503.1(g)(1)(v)(A)." *Id.* at ¶ 63(c);

- Failing "to state the specific reasons or reasons for the adverse determinations . . . and [failing] to afford the insured the right to appeal the denial and have a full and fair review of the claim and adverse benefit decision in violation of 29 CFR 2560.503.1(g)-(j)." *Id.* at ¶ 63(d);

- Failing "to reference the specific plan provisions on which the determinations were based in violation of 29 CFR 2560.503.1(g)(1)(ii),(iii)." *Id.* at ¶ 63(e);

- Failing "to provide a description of any additional material or information necessary for Plaintiffs to perfect their claim and an explanation of why such material or information was necessary in violation of 29 CFR 2560.503.1(g)(1)(ii),(iii)." *Id.* at ¶ 63(f);

- Failing "to afford a reasonable opportunity for a full and fair review of the claim submitted by Plaintiffs and any decision denying the claim." *Id.* at ¶ 65(g); and

- Failing "to pay the 'usual and customary charge' for [Dr. Risin's] [s]ervices which is the 'usual and customary charge' in a given geographical area." *Id.* at ¶ 63(h).

Plaintiffs' arguments are misplaced. First, the Complaint, as currently drafted, appears to couch an independent claim for breach of fiduciary duty within the confines of § 502(a)(1)(B). Even assuming that Plaintiffs have pled facts sufficient to find that Defendants served as "fiduciaries"[13] under the Plan, the Third Circuit has explicitly held that "§ 502(a)(1)(B) does not

---

[13] ERISA provides that:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Because Plaintiffs have failed to adequately allege any claim for breach of fiduciary duty, the Court need not determine whether Defendants are "fiduciaries," as that term is defined under ERISA, in deciding the instant Motions.

create a private cause of action for breach of fiduciary duty." *Michaels v. Breedlove*, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1500 (3d Cir. 1994) (holding that a plaintiff "may not recover damages for a breach of fiduciary duty under section 502(a)(1)(B) of ERISA."); *see, e.g.*, *Hailey v. AGL Res., Inc.*, No. 07-2352, 2008 WL 482331, at *3 (D.N.J. Feb. 19, 2008) (dismissing the plaintiff's claim for breach of fiduciary duty as improperly pled under § 502(a)(1)(B)). Therefore, because Plaintiffs cannot recover damages for a breach of fiduciary duty under § 502(a)(1)(B) of ERISA, Plaintiffs' references to fiduciary functions cannot serve as a basis for this Court to find that Plaintiffs have sufficiently alleged a § 502(a)(1)(B) claim.

Second, the Court will only briefly address Plaintiffs' attempt to rely on Defendants' alleged procedural violations to state a § 502(a)(1)(B) claim. In the Complaint, Plaintiffs allege that Defendants failed to respond to Plaintiffs' requests for documents, failed to provide adequate notice in writing setting forth the specific reasons for denying the Claim, failed to reference the specific reasons for denying the Claim, and failed to afford a reasonable opportunity for a full and fair review of the Claim. *See* Compl. ¶ 63. At the outset, the Court notes that Plaintiffs' allegations appear to track the requirements of § 503 of ERISA and 29 C.F.R. § 2560.503-1.[14] In that regard, § 503 requires that every employee benefit plan:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

---

[14] Indeed, the Complaint specifically references the requirements of § 503 and 29 C.F.R. § 2560.503.1. Compl. ¶¶ 27-28.

29 U.S.C. § 1133.  The accompanying regulations, promulgated under 29 C.F.R. § 2560.503-1,

"set[] forth minimum requirements for employee benefit plan procedures pertaining to claims for

benefits by participants and beneficiaries."  29 C.F.R. § 2560.503-1(a).  With respect to the

timing of notification of a benefit determination, the regulations provide as follows:

> . . . Except as provided in paragraphs (f)(2) and (f)(3) of this section, if a claim is wholly or partially denied, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, but not later than 90 days after receipt of the claim by the plan, unless the plan administrator determines that special circumstances require an extension of time for processing the claim. If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 90–day period. In no event shall such extension exceed a period of 90 days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the benefit determination.

29 C.F.R. § 2560.503-1(f)(1).  Additionally the regulations cited in the Complaint require that a

plan administrator provide written notification of any adverse benefit determination setting forth:

> (i) The specific reason or reasons for the adverse determination;

> (ii) Reference to the specific plan provisions on which the determination is based;

> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

> . . .

> (v) In the case of an adverse benefit determination by a group health plan—

> > (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

> > (B) If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the

> plan to the claimant's medical circumstances, or a statement that such explanation
> will be provided free of charge upon request.

29 C.F.R. § 2560.503-1(g)(1).

Here, the Court finds that Plaintiffs' allegations that Defendants failed to comply with the procedural requirements of § 503 and 29 C.F.R. § 2560.503-1 do not provide a sufficient basis for this Court to conclude that Plaintiffs have stated a viable § 502(a)(1)(B) claim. As an initial matter, it is well-settled within this Circuit that § 503 and 29 C.F.R. § 2560.503-1 merely set forth the procedural requirements of a plan, and do not establish private rights of action. *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 851 (3d Cir. 2011) (holding that although § 503 does not provide a private right of action, "an administrator's compliance with § 503 in making an adverse benefit determination is probative of whether the decision to deny benefits was arbitrary and capricious."); *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000) ("We have previously held that § 503 sets forth only the disclosure obligations of 'the Plan' and that it does not establish that those obligations are enforceable . . . ."); *Ashenbaugh v. Crucible Inc., 1975 Salaried Ret. Plan*, 854 F.2d 1516, 1532 (3d Cir. 1988) (noting "the general principle that an employer's or plan's failure to comply with ERISA's procedural requirements does not entitle a claimant to a substantive remedy."); *Shah v. Aetna*, No. 17-195, 2017 WL 2918943, at *3 (D.N.J. July 6, 2017) (observing that "courts in this District have found that § 1133 and 29 C.F.R. 2560.503–1 do not create a private cause of action."). Accordingly, to the extent that Plaintiffs are attempting to assert a separate cause of action alleging violations of § 503 and 29 C.F.R. § 2560.503–1, that claim is not cognizable.

Nor can Plaintiffs' allegations that Defendants violated the procedural requirements of § 503 and 29 C.F.R. § 2560.503–1 serve as the basis for this Court to find that Plaintiff has stated a viable § 502(a)(1)(B) claim. Significantly, in *Syed*, the Third Circuit explained that the "remedy

for a violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of a full and fair review," rather than a substantive damages remedy. *Syed*, 214 F.3d at 162; *see also Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002) ("The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation."); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) (when an administrator does not provide an adequate finding or explanation for its denial, the proper remedy "is to send the case back to the tribunal for further findings or explanation."). It follows that Plaintiffs' attempt to couch their claim for violations of § 503 and 29 C.F.R. § 2560.503–1 within their § 502(a)(1)(B) must fail, because the sole form of relief sought in connection with that claim – money damages – is unavailable for procedural violations of ERISA. *See Hines v. Massachusetts Mut. Life Ins. Co.*, 43 F.3d 207, 211 (5th Cir. 1995) ("Failure to fulfill procedural requirements generally does not give rise to a substantive damage remedy."). Indeed, finding that Plaintiffs have stated an actionable § 502(a)(1)(B) claim solely by pointing to procedural violations, without any connection to the terms of the Plan, would violate the general principle, set forth, *supra*, that § 502(a)(1)(B) provides a mechanism for plaintiffs to enforce their contractual right to benefits "*under the terms of the plan*." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). Accordingly, although Plaintiffs' allegations that Defendants failed to comply with ERISA's procedural requirements could ultimately bear on the question of whether Defendants' denial of the Claim was arbitrary and capricious, *see Miller*, 632 F.3d at 851, the Court cannot find that those allegations, standing alone, are sufficient to state a claim for relief under § 502(a)(1)(B).

In sum, the Court will dismiss Mr. Robinson's § 502(a)(1)(B) claim, based on his failure to identify any provision in the Plan that requires Defendants to pay for out-of-network services

at the usual or customary rate. To the extent that Mr. Robinson can identify such a provision in the Plan, the Court grants Mr. Robinson leave to file an amended § 502(a)(1)(B) claim, identifying language in the Plan that obligated Defendants to pay for out-of-network services at the usual or customary rate.

### 2. Count Two: Entitlement to Attorneys' Fees Under § 502(g)(1) of ERISA

In Count Two of the Complaint, Plaintiffs seek attorneys' fees and costs under § 502(g)(1) of ERISA. § 502(g)(1) provides that, in an ERISA action brought by a participant, beneficiary, or fiduciary, a "district court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "While the statutory provision itself does not dictate that a party must prevail in order to be awarded attorney's fees, courts have interpreted the statute as requiring a party to prevail before fees will be awarded." *Local 827 Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon NJ Inc.*, No. 02-1019, 2006 WL 2246369, at *2 (D.N.J. Aug. 3, 2006); *see Martorana v. Bd. of Trustees of Steamfitters Local Union 420 Health, Welfare & Pension Fund*, 404 F.3d 797, 804 (3d Cir. 2005) ("ERISA allows for the award of attorney's fees to the prevailing party at the discretion of the court . . . ."). As discussed, *supra*, Plaintiffs have failed to state a claim for denial of benefits under § 502(a)(1)(B), and have not asserted any other substantive claim entitling them to relief in this action. In the absence of a surviving claim, Plaintiffs cannot be regarded as prevailing parties in this action, and necessarily, Plaintiffs' request for attorneys' fees also fails. *See Funicelli v. Sun Life Fin. (US) Servs. Co.*, No. 12-06659 FLW, 2014 WL 197911, at *9 (D.N.J. Jan. 14, 2014) ("Plaintiff has failed to state a claim for denial of benefits under § 1132(a)(1)(B), and therefore necessarily cannot state a claim for entitlement to attorneys' fees in the absence of a surviving underlying claim for

benefits. Therefore, the Second Amended Complaint also fails to state a claim for attorneys' fees under ERISA.").

### D. Exhaustion of Administrative Remedies

Finally, Defendants argue that dismissal of the Complaint is warranted, because Plaintiffs failed to exhaust their administrative remedies by timely appealing the April 21, 2014 adverse benefits determination.  In opposition, Plaintiffs dispute that Mr. Robinson's appeal was untimely, contending that his appeal was within the timeframe permitted under the Plan and the EOB.  In the alternative, Plaintiffs argue that they should be excused from the exhaustion requirement, because the EOB did not comply with the requirements of either the Plan or ERISA.  Specifically, Plaintiffs maintain that the EOB "failed to provide any information as to the urgent care review process and failed to reference the specific plan provision, the description of any additional material or information needed to perfect the appeal and information about any internal rule, guideline, protocol or other criterion relied on in" partially denying the Claim.  Pls.' Br. at 18.

While ERISA does not expressly contain an exhaustion requirement, the statute requires that the covered benefit plans provide administrative remedies for those whose claims have been denied.  *See* 29 U.S.C. § 1133; *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007). As a result, The Third Circuit has stated that, except in limited circumstances, courts will not entertain ERISA claims unless the plaintiff has exhausted all administrative remedies available under the terms of the covered plan.  *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 249 (3d Cir. 2002); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances . . . , a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.").  The exceptions to ERISA's exhaustion requirement are

32

futility, risk of irreparable harm, and denial of meaningful access to administrative procedures. *Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 414 (D.N.J. 2001).

As the previous discussion illustrates, it appears, from the Complaint, that Plaintiffs are attempting to assert a separate claim for breach of fiduciary duty. Importantly, the Third Circuit has held that the exhaustion requirement does not apply to claims for statutory breach of fiduciary duty under § 404(a) – the provision identified in the Complaint, Compl. ¶ 55 – so long as the claim for breach of fiduciary duty is not "'actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'" *Harrow*, 279 F.3d at 254 (quoting *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)). Because the Court has already found that dismissal of the Complaint is warranted, due to Plaintiffs' failure to state a viable § 502(a)(1)(B) claim, and further, because it is unclear, from the Complaint, whether Plaintiffs are attempting to assert a separate claim for breach of fiduciary duty, the Court need not reach the issue of whether Plaintiffs exhausted their administrative remedies prior to filing this action, or whether exhaustion should be excused as a result of Defendants' failure to abide by ERISA's procedural requirements.[15] In the event that an amended complaint is filed, Defendants are free to raise the issue of administrative exhaustion at that time.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motions to Dismiss the claims of the Providers are granted with prejudice. Defendants' Motions to Dismiss Mr. Robinson's § 502(a)(1)(B)

---

[15] Indeed, as the Court detailed, *supra*, Plaintiffs' vague and confusing references to the timing of its alleged appeals in this case would make such a determination difficult. Should Plaintiffs choose to file an amended complaint, they are advised to articulate, with specificity, the dates on which their alleged first and second appeals were filed.

claim are granted without prejudice, based on Mr. Robinson's failure to identify any provision in the Plan requiring Defendants to pay the usual or customary rate for out-of-network services.  To the extent that Mr. Robinson can identify such a provision in the Plan, the Court grants Mr. Robinson leave to file an amended § 502(a)(1)(B) claim, within thirty (30) days from the date of the Order accompanying this decision.


Dated:  March 22, 2018                                   /s/ Freda L. Wolfson
                                                         Hon. Freda L. Wolfson
                                                         United States District Judge