UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CLIFFORD ROBINSON,

    Plaintiff,

v.

ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et. al.,

    Defendants.

Civil Action No.: 17-4600 (FLW)

**OPINION**

**WOLFSON, United States District Judge**:

    In an Opinion issued on March 22, 2018, the Court dismissed Plaintiff Clifford Robinson's ("Plaintiff" or Mr. Robinson") Complaint, asserting a claim under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), arising from the partial denial of benefits under an employee health insurance benefits plan. Despite finding that Plaintiff failed to sufficiently plead facts demonstrating that Defendants Anthem Blue Cross Life and Health Insurance Company ("Anthem") and Ashland LLC ("Ashland") (cumulatively, "Defendants") were obligated by the relevant ERISA Plan to pay for out-of-network services in accordance with the "usual and customary rate," the Court granted Plaintiff leave to amend. Subsequently, Plaintiff filed a First Amended Complaint against Defendants, amending his § 502(a)(1)(B) claim. Defendants now move to dismiss the First Amended Complaint, arguing that Plaintiff's amended § 502(a)(1)(B) claim, too, fails to sufficiently allege that Plaintiff is entitled to additional benefits. For the following reasons, Defendants' motion to dismiss is **GRANTED**. However, Plaintiff is given a final opportunity to amend his Complaint, consistent with the dictates of this Opinion, within twenty (20) days from the date of the Order accompanying this decision.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The underlying facts of this dispute have been thoroughly set forth in the Court's previous March 22, 2018 Opinion and are incorporated herein. *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4699, 2018 U.S. Dist. LEXIS 4718 (D.N.J. March 22, 2018). Therefore, to avoid repetition, the Court will only provide a brief summary here.

Michael S. Risin, M.D. ("Dr. Risin"), is a board certified plastic surgeon who is licensed to practice in the state of New Jersey. Am. Compl. ¶ 2. Dr. Risin is a shareholder in, or owner of, Atlantic Plastic & Hand Surgery PA (cumulatively with Dr. Risin, the "Providers"),[1] a healthcare provider with an office in Little Silver, New Jersey. *Id.* On February 12, 2014, Dr. Risin performed surgery and other medical services (the "Procedure") on Mr. Robinson at the Riverview Medical Center in Red Bank, New Jersey. *Id.* ¶¶ 32, 37.

Plaintiff is a member of, and participant in, a self-funded, ERISA governed employee health insurance benefits Plan (the "Plan") that is sponsored by Ashland and administered by Anthem. *Id.* ¶¶ 6, 10-11. The Providers are "non-participating," "out-of-network providers" and the services provided to Plaintiff were "out-of network" services, as defined under the Plan, because the Providers did not contract with Anthem. *Id.* ¶¶ 33-34.

Subsequent to the Procedure, the Providers submitted a claim to Anthem (the "Claim"), as the purported assignees of Plaintiff, requesting payment in the amount of $55,761.30 for the out-of-network services that were provided to Plaintiff. *Id.* ¶ 38. On April 21, 2014, Anthem sent

---

[1] For purposes of completeness, the Court notes that the Providers were originally named as Plaintiffs in the Complaint. However, the Court found that the Providers lacked standing to assert ERISA claims in this action, on the basis that they were neither participants nor beneficiaries under the Plan. *Atl. Plastic & Hand Surgery, PA*, 2018 U.S. Dist. LEXIS 4718, at *9-19.

the Providers an explanation of benefits notice (the "EOB"), authorizing partial payment of the Claim to the Providers in the amount of $3,501.60. *Id.* ¶ 40.

On June 22, 2017, Plaintiff filed a two-count Complaint, seeking to recover the unpaid balance of the claim: (1) Count One asserted that Defendants violated § 502(a)(1)(B) of ERISA by, among other things, underpaying the Providers for the services rendered to Mr. Robinson, and (2) Count Two asserted that Plaintiff is entitled to attorneys fees and costs, pursuant to § 502(g)(1) of ERISA. Defendants subsequently filed a motion to dismiss, which this Court granted on March 22, 2018. However, Mr. Robinson was given leave to amend his claim under § 502(a)(1)(B) of ERISA. On April 20, 2018, Mr. Robinson filed his First Amended Complaint.

In the instant matter, Defendants, once again, move to dismiss Plaintiff's First Amended Complaint for failure to state a claim, arguing that the additional facts pled therein fail to state a cognizable cause of action under § 502(a)(1)(B) of ERISA. Plaintiff opposes Defendants' motion to dismiss.

## II.     DISCUSSION

### A.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard

requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.; see also Iqbal*, 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### B. Analysis[2]

---

[2] As a threshold issue, the parties dispute whether Plaintiff has adequately complied with the administrative remedies available under the Plan, prior to the initiation of this legal action. Specifically, Defendants contend that Plaintiff filed an appeal of Defendants' "adverse benefit determination," issued on April 21, 2014, subsequent to the expiration of the 180-day deadline, set forth under the Plan. Plaintiff's untimeliness, according to Defendants, precludes him from asserting a claim under § 502(a)(1)(B). However, the Court finds Defendants' contention without merit. Notwithstanding Plaintiff's alleged failure to comply with the pertinent administrative procedures, the First Amended Complaint alleges that Defendants, nonetheless, denied Plaintiff's appeal on substantive grounds. Indeed, the First Amended Complaint references a letter, dated June 17, 2015, wherein Defendants provide the following response to Plaintiff's appeal: "[a]fter

Under § 502(a)(1)(B) of ERISA, a "participant" or "beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see Manning v. Sanofi-Aventis*, *U.S. Inc.*, No. 11-1134, 2012 U.S. Dist. LEXIS 114129, at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(1)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(1)(B).").

In the prior Opinion, I held that the original allegations, as pled in the initial Complaint, failed to assert sufficient facts to state a plausible claim for wrongful denial of benefits under § 502(a)(1)(B). In that connection, although Plaintiff alleged that Defendants failed to pay the "usual and customary charge" for the out-of-network services of which he was a recipient, Plaintiff did not identify a specific provision in the Plan obligating Defendants to provide compensation at that rate for out of network services. *Atl. Plastic & Hand Surgery, PA*, 2018 U.S. Dist. LEXIS 47181, at *29. Therefore, the Court found, as pled, Plaintiff failed to identify a provision in the Plan that would entitle him to additional benefits at the "usual and customary

---

further review of the above claim, the claim has processed correctly to pay in network at plan allowance, and not at billed charged." Significantly, Defendants, therein, did not deny Plaintiff's administrative appeal on timeliness grounds, notwithstanding his failure to file it within the 180-day deadline. Therefore, Defendants cannot raise such grounds, here, in moving to dismiss Plaintiff's § 502(a)(1)(B). Any argument, in this regard, is waived. *Becknell v. Severance Pay Plan of Johnson & Johnson,* No. 13-4622, 2014 U.S. Dist. LEXIS 54684, at *9-19 (D.N.J. April 21, 2014).

rate" for out-of-network medical services, and, as a result, Plaintiff's § 502(a)(1)(B) claim was dismissed without prejudice.

In an attempt to comply with the dictates of this Court, Plaintiff filed a First Amended Complaint. In relevant part, the First Amended Complaint alleges additional facts in connection with the out-of-network medical services Plaintiff received and the provisions of the Plan forming the basis of this action:

> 44. I went to Riverview Medical Center in Red Bank, New Jersey on February 12, 2014 for significant back pain. I was seen in the Emergency Department and as a result of the findings, I was admitted through the Emergency Department. During the cour[se] of this ER admit, Dr. Risin was called in emergently to perform surgery on the same day for a severe infection in my back. (I did not have time to shop for an in-network physician during this emergency). This facility is an in-network hospital.
> . . .
> 49. The Plan provides coverage for '. . . Hospital emergency room care including a medical screening examination that is within the capability of the emergency department of a Hospital . . .'
>
> 50. The Plan provides for the Maximum Allowed Amount for payment for Emergency Services as follows:
>
>> The Maximum Allowed Amount for emergency care from a[n] Out-of-Network Provider will be the greatest of the following:
>>
>> The amount negotiated with Network Providers for the Emergency service furnished;
>>
>> The amount for the Emergency Service calculated using the same method the Administrator generally uses to determine payments for Out-of-Network services but substituting the Network cost-sharing provisions for the Out-of-Network cost-sharing provisions; or
>>
>> The amount that would be paid under Medicare for the Emergency Service.
>
> 51. The Plan also defines a "Medical Emergency" as:
>
>> 'Emergency Services,' 'emergency care,' or 'Medical Emergency' means those health care services that are provided for a condition of recent onset

> and sufficient severity, including but not limited to, severe pain, that would lead a prudent layperson, possessing an average knowledge of medicine and health, to believe that his or her condition, sickness, or Injury is of such a nature that failure to obtain immediate medical care could result in: (a) placing the patient's health in serious jeopardy; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part. . . .

Am. Compl., ¶¶ 47-51.

At the outset, the Court notes that Plaintiff's amended allegations are unrelated to those initially pled in the original Complaint, concerning Defendants' purported failure to provide compensation at the "usual and customary rate" for out-of-network medical services. Nevertheless, in the First Amended Complaint, Plaintiff asserts facts in connection with the provisions of his Plan, relating to the particular methods by which Defendants are required to determine the rate of compensation for out-of-network medical services. Therefore, the Court will examine whether Plaintiff's amended allegations are sufficient for the purpose of asserting a cognizable § 502(a)(1)(B) claim.

Here, the facts pled in the First Amended Complaint allow the Court to reasonably infer that the treatment which Plaintiff received for "a severe infection," immediately upon his admission to the Emergency Department at Riverview Medical Center, constitutes "Emergency Services" under the Plan. Am. Compl. ¶ 44. In this regard, Plaintiff alleges facts referencing particular provisions in the Plan obligating Defendants to pay certain benefits in connection with out-of-network Emergency Services. As stated, these provisions set forth the procedures by which Defendants are required to ascertain the appropriate rate of compensation for out-of-network Emergency Services, including the maximum allowable amount being the greatest of the following: (a) amount negotiated with Network Providers for the Emergency Service furnished; (b) amount calculated using the method the Administrator generally uses to determine payments for Out-of-Network services, subject to the substitution of certain related costs; or (c)

amount paid under Medicare for the Emergency Service. *Id.* ¶ 44. However, although Plaintiff has identified the provisions which might entitle him to additional benefits for out-of-network services under the Plan, his additional allegations, nonetheless, fail to assert a cognizable § 502(a)(1)(B) claim.

Indeed, Plaintiff does not allege how Defendants' payment of $3,501.60 falls below the "maximum allowed" rate for out-of-network services under the Plan.[3] Nor does Plaintiff allege, at a minimum, that Defendants acted in contravention of the procedures for determining out-of-network benefits. Instead, Plaintiff merely references them in the First Amended Complaint, without articulating how the pertinent provisions of the Plan entitle him to additional compensation. Accordingly, based on these deficiencies, the Court finds that Plaintiff's First Amended Complaint—which solely points to relevant provisions in the Plan but fails to allege what amount Plaintiff should be entitled to under those provisions—does not assert a viable claim under § 502(a)(1)(B). *Complete Foot & Ankle v. Cigna Health & Life Ins. Co.*, No. 17-13742, 2018 U.S. Dist. LEXIS 82650, at *3 (D.N.J. May 16, 2018) ("[T]he Complaint contains little more than an assertion that Plaintiff is owed more than it was paid for the services it provided. This is insufficient . . . ."); *Lemoine v. Empire Blue Cross Blue Shield*, No. 16-6786, 2018 U.S. Dist. LEXIS 62535, at *16 (D.N.J. April 12, 2018) (dismissing the plaintiff's 501(a)(1)(B) claim, because the plaintiff, among other things, failed to demonstrate "how [the pertinent provisions of the plan] were violated"). Nevertheless, while Plaintiff's amended § 501(a)(1)(B) claim is dismissed, to the extent that Plaintiff can demonstrate that he is entitled to

---

[3] Plaintiff asserts, in a conclusory fashion, that Defendants relied on "flawed or inadequate data" in calculating the pertinent rates for medical services, and challenges the procedures by which those rates are determined as "vague" and "ambiguous." Am. Compl. ¶¶ 13, 47. However, Plaintiff fails to provide a factual basis to support either of these contentions. *See United States v. Vespe*, 868 F.2d 1328, 1340 (3d Cir. 1989).

additional benefits pursuant to the Plan provisions by which out-of-network rates are determined, the Court grants Plaintiff a final opportunity to amend his Complaint.[4]

Correspondingly, Plaintiff's additional claim for attorneys' fees is dismissed without prejudice.[5]

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's First Amended Complaint is **GRANTED**. Plaintiff shall have twenty (20) days from the date of the Order accompanying this Opinion to file a Second Amended Complaint. Defendants' request for attorneys' fees and costs pursuant to ERISA is **DENIED**.

Dated: November 30, 2018

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

---

[4] Although Plaintiff, once again, alleges in the First Amended Complaint that Defendants breached their fiduciary duties by failing to comply with certain procedural requirements under ERISA, the Court has already held that "§ 502(a)(1)(B) does not create a private cause of action for breach of fiduciary duty." *Michaels v. Breedlove*, No. 03-4891, 2004 U.S. App. LEXIS 25165, at *2 (3d Cir. Dec. 8, 2004). Therefore, to the extent that Plaintiff has sufficiently pled facts demonstrating that Defendants served as fiduciaries, Plaintiff's continuous references to Defendants' fiduciary functions cannot serve as a basis upon which to find that Plaintiff has alleged a valid § 502(a)(1)(B) claim.

[5] While Defendants move for attorneys' fees, they have not demonstrated that, in filing this action, Plaintiff acted in bad faith or with "a willingness to litigate without regard to the substantive merits of its claims." *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 16-8021, 2018 U.S. Dist. LEXIS 78058, at *4 (D.N.J. May 9, 2018). Accordingly, Defendants are not entitled to such relief at this time.